IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NATHAN C.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 19 C 6992 |
| v. ) | |
| ) | Magistrate Judge Gabriel A. Fuentes |
| KILOLO KIJAKAZI, Acting ) | |
| Commissioner of Social Security,[2] ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**[3]

Before the Court are Plaintiff Nathan C.'s motion to remand the Administrative Law Judge's ("ALJ") opinion denying his application for Social Security disability benefits[4] (D.E. 16) and the Commissioner's cross motion to affirm the opinion. (D.E. 24.)

---

[1] The Court in this opinion is referring to Plaintiff by his first name and first initial of his last name in compliance with Internal Operating Procedure No. 22 of this Court. IOP 22 presumably is intended to protect the privacy of plaintiffs who bring matters in this Court seeking judicial review under the Social Security Act. The Court notes that suppressing the names of litigants is an extraordinary step ordinarily reserved for protecting the identities of children, sexual assault victims, and other particularly vulnerable parties. *Doe v. Vill. of Deerfield*, 819 F.3d 372, 377 (7th Cir. 2016). Allowing a litigant to proceed anonymously "runs contrary to the rights of the public to have open judicial proceedings and to know who is using court facilities and procedures funded by public taxes." *Id.* A party wishing to proceed anonymously "must demonstrate 'exceptional circumstances' that outweigh both the public policy in favor of identified parties and the prejudice to the opposing party that would result from anonymity." *Id.*, citing *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 872 (7th Cir. 1997). Under IOP 22, both parties are absolved of making such a showing, and it is not clear whether any party could make that showing in this matter. In any event, the Court abides by IOP 22 subject to the Court's stated concerns.

[2] The Court substitutes Kilolo Kijakazi for her predecessor, Andrew Saul, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d) (a public officer's successor is automatically substituted as a party).

[3] On November 1, 2019, by consent of the parties and pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, this case was reassigned to this Court for all proceedings, including entry of final judgment. (D.E. 9.)

[4] The Appeals Council subsequently denied review of the opinion (R. 1), making the ALJ's decision the final decision of the Commissioner. *Butler v. Kijakazi*, 4 F.4th 498, 500 (7th Cir. 2021).

I. **Background**

Plaintiff alleges that he became disabled on March 18, 2016, at age 40. (R. 131.) Two months earlier, on January 14, 2016, while working as a restaurant manager, he developed sudden, sharp left-sided back pain while bending over, then lost consciousness and fell to the ground, hitting his head. (R. 266.) In the emergency room, he was given Norco (hydrocodone and acetaminophen) and Valium (a sedative). (*Id*.) That month, a cervical spine MRI showed mild narrowing at C4-C5 (R. 223), a head CT scan showed mild soft tissue swelling (R. 224), and a lumbar spine MRI showed mild to moderate narrowing at L4-L5. (R. 263-64.) On January 21, Plaintiff met with orthopedic surgeon Mark Sokolowski, M.D., reporting persistent dizziness and headaches, back and neck pain at a level of 7/10, and leg and arm pain at 5/10; he had pain on extension and palpation in these areas. (R. 266-67.) He was prescribed Medrol (anti-inflammatory steroid), referred to physical therapy ("PT") and excused from work. (R. 267.) With PT and medication, Plaintiff's back and neck pain improved to 3/10 and 2/10, and Dr. Sokolowski recommended Plaintiff return to full-duty work on March 14. (R. 250.) On March 18, however, Plaintiff returned to Dr. Sokolowski, reporting that working caused his lumbar pain to increase to 10/10, making it difficult for him to stand or walk. (R. 246-48.) In addition to PT, Dr. Sokolowski prescribed Medrol and Tramadol (narcotic) and a TENS (transcutaneous electrical nerve stimulation) unit for home therapy and ordered Plaintiff off work. (R. 236, 246.)

During Plaintiff's 13 PT sessions from March through July 2016, he complained of radiating middle and lower back pain, radiating neck and upper back pain and bilateral hand tingling, and the physical therapist regularly observed him to have poor standing posture. (R. 288-306.) Although Plaintiff usually reported improvement in his pain after his PT session, by his next session, his pain would return to at least a 4-5/10 in one or more areas of his back and neck, and

2

in June and July 2016, Plaintiff reported having pain of 5-7/10 in one or more areas of his back or neck, and he had decreased cervical and lumbar range of motion ("ROM") and decreased upper and lower extremity strength. (*See* R. 293-96.) On June 27, Plaintiff's physical therapist noted that his goals of improving his tolerance for standing/ambulation, improving his ability to perform activities of daily living ("ADLs") and improving his ability to manage his pain had not been met, although his ROM had improved. (R. 291.) Plaintiff also met with Dr. Sokolowski three times from April through July 2016. During those meetings, Plaintiff reported that he had radiating back and neck pain at 2-5/10 and had developed numbness in his hands and fingers; Dr. Sokolowski observed that he continued to have tenderness with extension and palpation but that his gait and posture were normal. (R. 226, 333). Dr. Sokolowski recommended Plaintiff receive a lumbar epidural steroid injection ("ESI"), for which Plaintiff was "await[ing] insurance company approval." (R. 326.)

On August 4, 2016, Plaintiff reported that his pain had taken a turn for the worse. He told his physical therapist that he was in excruciating pain and could barely walk (R. 288), and he told Dr. Sokolowski that the pain had increased over the past several days and included lower back pain at 8/10 with radiation to his right leg and neck pain at 8/10 with associated headaches. (R. 323.) During Dr. Sokolowski's examination, Plaintiff's gait was antalgic, he had pain with extension and palpation, and testing was positive for nerve pain in his spine, although he had full strength in his extremities. (*Id*.) Dr. Sokolowski prescribed Medrol, Dendracin (a topical nonnarcotic anti-inflammatory) and Norco for breakthrough pain, and he recommended that Plaintiff continue to stay off work. (*Id*.)

On August 18, Plaintiff filled out a function report, describing severe headaches and pain in his back that prevented him from sitting or standing for extended periods. (R. 188.) He wrote

that he spent most of the day laying down, and he had trouble dressing, showering and using the toilet because standing and bending irritated his back. (R. 189-90.) A nanny took care of his toddler son while his wife was at work, and his wife did all the housework. (*Id*.) Plaintiff noted that he could drive a car and lift 20 pounds. (R. 191-93.)

On August 29, a non-examining state agency physician opined that Plaintiff had severe disorders of the back and migraines and had the residual functional capacity ("RFC") for sedentary work (lifting no more than 10 pounds at a time, standing/walking for two hours, and sitting six hours in an eight-hour workday), further limited to occasional stooping, kneeling, crouching, and occasional climbing ramps, stairs, ladders, ropes and scaffolds, and with environmental limitations due to his severe headaches. (R. 60-63.) This opinion was affirmed on reconsideration. (R. 73-74.)

On September 16, 2016, Plaintiff told Dr. Sokolowski that Medrol had diminished his symptoms somewhat, but that he still had back, neck and shoulder pain at 7/10; examination confirmed pain and tenderness with palpation and extension. (R. 338.) Plaintiff's insurance had not yet approved an ESI, so Dr. Sokolowski recommended he continue doing PT and home exercise and taking hydrocodone and Dendracin. (*Id*.) On September 27, Plaintiff filled out another function report, writing that "[s]itting for longer than a short period of time . . . cause[d] severe pain in [his] back and . . . numbness in [his] hands and feet," and he had to "lay down and sit often." (R. 204.) In PT notes from that month, Plaintiff reported that his mid and low back were extremely painful, and the physical therapist observed that he had poor standing posture and tenderness to palpation; Plaintiff reported seeing slow improvement in his back pain and function but that his back continued to be very stiff and painful. (R. 354-55, 397-98.)

On October 19, Dr. Sokolowski filled out a physical RFC form, opining that due to Plaintiff's conditions, he was unable to sit, stand or walk more than 2.5 hours a day; he could not

lift or carry more than 10 pounds occasionally; he could never climb ladders, balance, stoop, kneel, crouch or crawl; and he could occasionally reach overhead and at desk level but not below, grasp firmly with his hands, climb stairs and operate foot controls. (R. 364-65.) His ability for fine manipulation was not affected by his conditions. (R. 364.)

In November and December 2016, Plaintiff continued to report middle and low back pain as well as neck pain during his seven PT sessions. (R. 386-92.) On November 3, his middle back was so painful that he had trouble walking. (R. 391.) On December 16, Plaintiff met with pain management doctor Neema Bayran, M.D. Examination showed tenderness over his cervical spine, pain on flexion and extension, and he had reduced ROM in his upper back, neck and shoulders due to pain. (R. 410-11.) In his lumbar spine, Plaintiff also had tenderness, pain from flexion, extension and bending, and reduced ROM due to pain, although his gait was normal and he had full lower extremity strength. (R. 411-12.) Dr. Bayran opined that Plaintiff had "failed conservative treatment," and he recommended Plaintiff receive an ESI at L4-L5 and L5-S1. (R. 412.)

On January 18, 2017, PT notes indicated that Plaintiff had upper back pain at 7/10 with headaches at 8-9/10, and lower back pain at 6/10, and his fingertips and feet were numb. (R. 385.) At PT on January 26, he reported that his upper back continued to be very painful, and his lower back was weak. (R. 383.) In February, PT notes indicated that Plaintiff's upper, middle and lower back continued to be very painful, sore and tight. (R. 380, 382.) On April 14, Dr. Bayran gave Plaintiff lumbar ESIs at L4-L5 and L5-S1 to address his "low back pain and right leg pain secondary to disc protrusion with neural foraminal narrowing at L4-L5 and disc protrusion with spinal stenosis at L5-S1." (R. 414.)

The remaining three medical reports in the record, from July, October and November 2017, are from gastroenterologist David Chua, M.D., from whom Plaintiff sought treatment for

5

abdominal pain and other gastrointestinal issues. (R. 422-23.) Milk of magnesia resolved Plaintiff's complaints but an ultrasound showed Plaintiff had nonalcoholic steatohepatitis ("NASH" or fatty liver disease). (R. 425-28.) As Plaintiff was 40 pounds overweight, Dr. Chua recommended he lose weight through healthy eating and increased physical activity. (R. 426-28.) Plaintiff did not complain of musculoskeletal issues at these examinations. (R. 426-29.)

## II. Hearing Testimony

On May 15, 2018, Plaintiff testified that he could only stand or sit up to 45 minutes at a time, and he had difficulty reaching in front of himself due to upper back pain. (R. 45-46.) He also had difficulty using his hands because "[w]hen [his] fingertips are numb, it's a little weird." (*Id*.) Plaintiff did little to no housework due to his pain, and his wife helped him get dressed and shower when she was home. (R. 47-48.) He drove a car, but Plaintiff testified that he had difficulty putting his two-year-old son in the car seat to take him to daycare. (R. 49-50.) He used a cellphone and an iPad daily. (R. 50-51.) Plaintiff noted that he was slouching in his chair at the hearing because it was "the only comfortable position" for him. (R. 51.)

The vocational expert ("VE") testified that Plaintiff performed his past work as a restaurant manager at the heavy level, and before that, he worked as a bookkeeper, which is listed as sedentary in the Dictionary of Occupational Titles, but which he performed at the light level. (R. 53.) In response to the ALJ's questions, the VE opined that sedentary, unskilled jobs were available for a hypothetical individual who could lift and carry up to 10 pounds; stand or walk two hours and sit six hours in an eight-hour workday; occasionally reach overhead and behind; frequently reach in all other directions; frequently handle, finger and feel; occasionally operate foot controls, climb ramps and stairs, balance, stoop, crouch, kneel, crawl, bend and twist; never climb ladders, ropes

or scaffolding, or have concentrated exposure to certain environmental irritants; and had the option to stand one to two minutes after sitting for 30 minutes. (R. 53-54.)

### III. ALJ Opinion

On September 28, 2018, the ALJ issued a written opinion finding Plaintiff had not been under a disability since his alleged onset date of March 18, 2016. (R. 27.) The ALJ found Plaintiff had the severe impairments of spinal disorder, nonalcoholic steatohepatitis, obesity and headaches. (R. 20.) She determined Plaintiff's impairments alone or in combination did not meet a Listing and assigned Plaintiff the same RFC she presented in the hypothetical to the VE. (R. 20-22.) The ALJ noted the following facts:

- Plaintiff reported "experiencing severe, radiating back and neck pain, bilateral upper and lower extremity numbness and tingling, and headaches . . . that affect[] his ability to sit or stand long periods as well as walk, and cause[] him to lay down often throughout the day," and he "reported the ability to handle his personal care and medications without reminders, go outside daily, interact with his family, and sustain sufficient attention to drive, manage his finances, watch Netflix and television, and follow . . . instructions." (R. 23.) Plaintiff also "reported his pain symptoms improved with use of a Medrol Dosepak, Tramadol, and physical therapy, and [he] exhibited decreased spinal tenderness following receipt of an epidural injection." (*Id*.) Plaintiff "did not allege specific problems with obesity." (R. 24.)

- Imaging showed "multilevel cervical and lumbar degenerative disc disease with annular tear at the L4-L5 level, moderate lumbar stenosis, and mild cervical neural foraminal narrowing at the C4-C5 level," and "mild soft tissue swelling" in Plaintiff's head. (*Id*.)

- During examinations, Plaintiff "demonstrated an antalgic gait with markedly positive straight leg raise on the right and mildly positive on the left, reproducible radicular pain, decreased lower extremity sensation, and reduced cervical and lumbar range of motion with tenderness." (*Id*.) However, he "failed to appear in acute distress during subsequent physical examinations," he "maintained intact strength in his bilateral upper and lower extremities, intact upper extremity sensation, and full bilateral grip strength," and his "gait improved to normal limits and his posture, range of motion, and left sided straight leg raise improved with physical therapy, which he continued to undergo along with use [of] a TENS unit." (R. 23-24.) Plaintiff also "denied experiencing any joint stiffness, leg cramps, or muscle aches" during Dr. Chao's examinations. (R. 24.)

Although they were not clearly set out, the Court gleaned that the ALJ made the following conclusions from the facts noted in the opinion:

- Plaintiff's "impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the . . . evidence in the record." (*Id.*)

- "[C]ontrary to his hearing testimony, in his prehearing Function Report, [Plaintiff] stated he could lift up to 20 pounds." (R. 23.)

- Plaintiff's ADLs show "that obesity has not limited day-to-day functioning." (R. 24.)

- Dr. Chao's recommendation that Plaintiff lose weight and engage in physical activity showed Dr. Chao "did not consider [his] obesity to be particularly serious." (*Id.*)

- The ALJ "considered [Plaintiff's] radicular pain, positive straight leg raise and cervical tenderness when incorporating the limitations" in the RFC and "added limitations such as avoiding concentration exposure to vibration to accommodate [his] headaches as well as upper extremity limitations in consideration of [his] testimony regarding bilateral hand numbness for which he undergoes physical therapy" (R. 25), and "the alternate sit/stand limitation in this case is in part a recognition of the effects of [Plaintiff's] obesity." (*Id.*)

- The opinions of the non-examining state agency medical consultants were entitled to some weight because they "did not review the entire record submitted at the hearing level," which included evidence of headaches and upper extremity limitations. (*Id.*)

- Dr. Sokolowski's October 2016 opinion was entitled to little weight because it was "inconsistent with [Plaintiff's] demonstration of normal gait, preserved strength in his bilateral upper and lower extremities, and reported pain improvement with ongoing physical therapy. Likewise, neither the objective record nor [Plaintiff's] ability to reach in front to hold and manipulate a steering wheel while driving supports the reaching in front limitation." (R. 25.) Also, Dr. Sokolowski's "multiple off-work restrictions" were entitled to no weight because they were "temporary in nature" and did not include "any objective support" or "functional limitations to support the conclusion reached." (*Id.*)

The ALJ ultimately found that Plaintiff was unable to perform any past relevant work, but that he was not disabled because jobs existed in significant numbers that he could perform. (R. 26-27.)

IV.  **Analysis**

An ALJ's decision will be affirmed if it is supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "[T]he threshold for

such evidentiary sufficiency is not high." *Id*. The Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination. Rather, this court asks whether the ALJ's decision reflects an adequate logical bridge from the evidence to the conclusions." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (internal citations and quotations omitted).

      **A.**    **The ALJ's Decision to Give Dr. Sokolowski's Opinion Little Weight Was Not Supported by Substantial Evidence**.[5]

On October 19, 2016, Plaintiff's treating orthopedic surgeon, Dr. Sokolowski, opined that due to his conditions, Plaintiff would not be able to sit, stand or walk more than 2.5 hours a day (R. 364-65), which would render him disabled under the Social Security regulations. *See* SSR 96-9p (in a sedentary job, "[s]itting would generally total about 6 hours of an 8-hour workday"). Because the ALJ did not assign controlling weight to this opinion, the ALJ was required to consider the following factors in determining the weight to give the opinion: examining relationship, length of treatment relationship, frequency of examination, nature and extent of treatment relationship, supportability of the opinion with medical findings, consistency with the record as a whole, and specialization. 20 C.F.R. § 404.1527(c)(2). However, the ALJ did not discuss these factors, instead stating only that she was giving Dr. Sokolowski's opinion little weight because it was inconsistent with Plaintiff's "demonstration of normal gait, preserved strength in his bilateral upper and lower

---

[5] The ALJ also gave no weight to the "multiple off-work restrictions" issued by Dr. Sokolowski because they were temporary and did not include detailed functional limitations. The off-work restrictions do not meet the definition of a "medical opinion" under the Social Security regulations. *See* 20 C.F.R. § 404.1527(a)(1) ("Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions.") Nevertheless, the Court notes that although the off-work restrictions were renewed multiple times and issued in conjunction with, and are consistent with, Dr. Sokolowski's examinations of Plaintiff, Defendant correctly points out that the off-work restrictions applied to Plaintiff's job of restaurant manager, which was performed at the heavy level, and thus they have little probative value regarding the sedentary RFC the ALJ assigned. (D.E. 25: Def.'s Mem. at 4.)

9

extremities, and reported pain improvement with ongoing physical therapy." (R. 25.) In some cases, an ALJ's failure to consider the regulatory factors is harmless, as "[a]n ALJ may decline to give a treating physician's opinion controlling weight when the opinion is inconsistent with the physician's treatment notes" and other evidence in the record. *Pavlicek v. Saul*, 994 F.3d 777, 781 (7th Cir. 2021).

However, in this case, the ALJ's determination that Dr. Sokolowski's opinion was inconsistent with other evidence was not supported by substantial evidence. The ALJ's conclusion ignored the numerous parts of the record that were consistent with Dr. Sokolowski's opinion, including facts the ALJ herself noted: "[o]bjective tests reveal[ing] multilevel cervical and lumbar degenerative disc disease," examinations from Dr. Sokolowski showing "antalgic gait with markedly positive straight leg raise on the right and mildly positive on the left, reproducible radicular pain, [and] decreased lower extremity sensation," and Dr. Bayran's findings of "reduced cervical and lumbar range of motion with tenderness." (R. 23.) In other words, the ALJ "cherry-pick[ed] facts supporting a finding of non-disability while ignoring evidence that point[ed] to a disability finding." *Reinaas v. Saul*, 953 F.3d 461, 466 (7th Cir. 2020) (internal quotations omitted). By skipping over the evidence that supported Dr. Sokolowski's opinion, the ALJ reached a conclusion that was completely untethered to the administrative record and thus not supported by substantial evidence.

In addition, the ALJ's determination that "during subsequent physical examinations," Plaintiff's "gait improved to normal limits and his posture, range of motion, and left sided straight leg raise improved with physical therapy" was not supported by substantial evidence. The ALJ erroneously "considered only the signs of possible improvements in these notes and ignored the negative findings." *Gerstner v. Berryhill*, 879 F.3d 257, 262 (7th Cir. 2018). Contrary to the ALJ's

10

determination, Dr. Sokolowski's reports and PT notes show that Plaintiff's functional ability did not consistently improve. Rather, the reports indicated that Plaintiff had good days and bad days; his reported pain and functional ability at times improved and at times worsened or stayed the same between February and July 2016. Where a claimant "also had reported that some days he felt worse than others, [] the fact that [a physician] recorded that he felt 'fine' at one appointment does not weaken the rest of his testimony about disabling pain." *Engstrand v. Colvin*, 788 F.3d 655, 661 (7th Cir. 2015). *See also Lambert v. Berryhill*, 896 F.3d 768, 776-77 (7th Cir. 2018) (quoting *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008) ("A person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days.... Suppose that half the time she is well enough that she could work[ ] and half the time she is not. Then she could not hold down a full-time job."))

Then, in August 2016, Plaintiff reported that his pain and functional ability took a sharp turn for the worse, and the medical reports since then show sporadic improvement at best. For example, on November 3, 2016, Plaintiff's middle back was so painful that he had trouble walking (R. 391), and on December 16, although Plaintiff's gait was normal, Dr. Bayran observed that Plaintiff had continued tenderness and pain over his cervical and lumbar spine and reduced ROM in his upper back, neck, shoulders and lumbar spine. (R. 410-12.) Furthermore, PT notes indicate that Plaintiff showed little improvement in January and February 2017, and in April 2017, Plaintiff received two lumbar ESIs to address his continued low back and right leg pain. But the ALJ's opinion improperly ignored the evidence undermining her conclusion that Plaintiff's condition had "improved" – and, indeed, may have worsened – because the opinion simply lumped the evidence

11

in the record together in long string cites regardless of the date of the evidence and regardless of the source of the evidence.[6]

The only time the ALJ notes possible improvement in Plaintiff's symptoms over time is in her description of Plaintiff's "July 2017 abdominal examination" for symptoms including chronic constipation and rectal bleeding related to his diagnosis of NASH. (R. 24.) The ALJ stated that "it [was] worth noting that the claimant denied experiencing any joint stiffness, leg cramps, or muscle aches during his digestive examinations." (*Id*.) That's it. Except with regard to Plaintiff's obesity,[7] the ALJ never cites to the "digestive examinations" again, even in the extremely long string cites she lists as support for her conclusions regarding Dr. Sokolowski's opinion and Plaintiff's supposed improvement. (*See* supra, n.6.) The ALJ gave no indication that she weighed them against the contrary evidence cited above (and all indications are that she ignored them in making her determination), or even that she weighed the notes from the "digestive examinations" at all before making her determination with regard to Dr. Sokolowski's opinion. And this Court is prohibited from weighing this evidence itself and coming to its own conclusion on the importance of the digestive examinations. That is the ALJ's job. Our job is to "ask[] whether the ALJ's

---

[6] Here are just a couple of examples of the many string cites in the opinion:

- "(*See* Exhibits 2F pgs. 2, 12-13, 4F pgs. 6, 8, 10, 13, 19, 23-24, 41,44, 51, 5F pg. 1, 6F pgs. 5-8, 7F pgs. 1, 9, 14, 17, 23-24, 35, 45, 50, 8F pgs. 2-4, 6-7, Hearing Testimony)." (R. 25)
- "(*See* Exhibits 2F pgs. 2-3, 7-9, 11-12, 14, 21-23, 26-27, 36, 43-44, 4F pgs. 41, 45, 50, 52, 5F pgs. 1, 3, 7F pgs. 1, 9, 11, 14, 18, 8F pgs. 8-9)." (*Id*.)

[7] Moreover, the ALJ's citation for Plaintiff's obesity makes no sense. The ALJ stated that "[t]he only treatments reflected in the record for the claimant's obesity were recommendations for diet and exercise, which suggests generally that the claimant's doctors did not consider the claimant's obesity to be particularly serious." (R. 24.) In support of this assertion, the ALJ cites only to the "digestive examinations" (the ALJ never mentions Dr. Chao or his specialty by name) and concludes that the recommendation that Plaintiff lose weight and increase physical activity showed the physician "did not consider [his] obesity to be particularly serious." (*Id*.) This conclusion is not supported by substantial evidence, and indeed, is belied by common sense. Dr. Chao recommended that Plaintiff lose weight because his obesity was a contributing factor to fatty liver disease.

12

decision reflects an adequate logical bridge from the evidence to the conclusions." *Reynolds*, 25 F.4th at 473. The answer in this case is a resounding no.

### B. The ALJ's Conclusions as to the Credibility of Plaintiff's Subjective Symptoms Were Not Supported by Substantial Evidence.[8]

The ALJ's determination that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the . . . evidence in the record" (R. 24) was also not supported by substantial evidence. The Court was able to glean a few factors upon which the ALJ appeared to rely for this determination. First, the ALJ relied on a minor purported inconsistency in Plaintiff's allegations. The ALJ found Plaintiff's statement in his pre-hearing function report in 2016 that he could lift 20 pounds was inconsistent with his hearing testimony almost two years later (R. 23), when Plaintiff testified that he could "lift 10,15 [pounds] without pain, but [he's] capable of lifting more, just then [he] probably won't walk." (R. 45.) Yet these statements are not inconsistent, because Plaintiff did not testify that he could not lift 20 pounds, only that he could not lift more than 10 to 15 pounds without pain. Thus, the record does not support the ALJ's conclusion that these statements cast doubt on Plaintiff's credibility.

Second, the ALJ appeared to conclude that Plaintiff's reports of "severe, radiating back and neck pain, bilateral upper and lower extremity numbness and tingling, and headaches . . . affect[ing] his ability to sit or stand long periods," were inconsistent with his reports of unimpaired mental functioning. (R. 23.) The ALJ stated that "despite [these] allegations," Plaintiff was able "to handle his personal care and medications without reminders, go outside daily, interact with his

---

[8] Initially, we reject Plaintiff's argument that the ALJ's use of the phrase "not entirely consistent" to describe Plaintiff's credibility improperly increased Plaintiff's burden of proof. (Pl.'s Br. at 17.) As we have noted previously, "[t]his Court and others in this district have consistently rejected the argument that using th[is] boilerplate language changes the Plaintiff's burden of proof, and Plaintiff has given us no reason to challenge the reasoning in those cases." *Lyn P. v. Saul*, No. 19 C 1596, 2021 WL 2823089, at *10 n.13 (N.D. Ill. July 7, 2021) (collecting cases).

family, and sustain sufficient attention to drive, manage his finances, watch Netflix and television, and follow oral and written instructions," "handle stress or routine changes," and "get along with others" (R. 23.) But these abilities represent "the areas of mental functioning a person uses in a work setting" (*see* Listing 12.00 Mental Disorders, Paragraph B), and the Court could not find any evidence in this record, let alone substantial evidence, supporting the ALJ's conclusion that Plaintiff's unimpaired mental capacity undermined his allegations of pain and physical limitations. Moreover, although Plaintiff may have been able "to handle his personal care . . . without reminders," he never claimed to be able to handle his personal care without physical assistance. He asserted both in his function report and in his hearing testimony that he had difficulty dressing and showering because he had difficulty bending. (*See*, *e.g.*, R. 189.)

      Defendant contends that the ALJ supported her credibility finding by considering "the type and effectiveness of plaintiff's treatment," specifically, that Plaintiff's pain symptoms improved with medication and physical therapy and that he "exhibited decreased spinal tenderness following receipt of an epidural injection." (Def.'s Mem. at 12, citing R. 23.) However, the ALJ never suggested that the type or effectiveness of Plaintiff's treatment – *i.e.*, the frequency or invasiveness (or lack thereof) of PT, medication and one ESI – cast doubt on Plaintiff's credibility, and "*Chenery* [] forbids the Commissioner from relying at this stage on a rationale that was not used by the agency." *Poole v. Kijakazi*, 28 F.4th 792, 796 (7th Cir. 2022) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)). The ALJ merely noted that Plaintiff (at times) had reported improvement with treatment. Moreover, there is no basis in the record for the ALJ's statement that the ESI provided Plaintiff with pain relief because there is no evidence in the record for four months after the ESI, and as explained above, the ALJ's determination that Plaintiff's gait and pain improved to the point of gainful activity was not supported by substantial evidence.

### C. The Errors in the ALJ's Opinion Were Not Harmless.

An error is harmless if, upon examination of the record, the Court can "predict with great confidence" that the ALJ would reach the same result on remand. *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022). The Court cannot consider the foregoing errors harmless. The Court combed through the opinion and its extensive citations to the administrative record and attempted to piece together the disparate parts of the ALJ's opinion, but we could find no logical connection between the evidentiary findings and the ALJ's conclusions that Dr. Sokolowski's opinion was entitled to little weight or that Plaintiff's mental abilities undermined his claims that he was disabled due to functional limitations stemming from pain throughout his back.[9] The Seventh Circuit's recent language in *Poole* resonates here:

> When an agency decision is so ambiguous that it frustrates judicial review, it cannot be upheld. Here, we can only speculate about what persuaded the ALJ to rule against [Plaintiff]. The ALJ's decision therefore falls short of *Chenery*'s command to articulate the grounds clearly and rationally for her decision.

*Poole*, 28 F.4th at 796 (citing *Chenery*, 318 U.S. at 87, 94, and *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)). Here, too, the ALJ's decision "falls short of *Chenery*'s command to articulate the grounds clearly and rationally for her decision." Therefore, remand is required.

---

[9] In making this determination, the Court considered the ALJ's entire decision, as the ALJ's determination that a claimant is not disabled can be supported by substantial evidence found anywhere in the ALJ's opinion. *See Zellweger v. Saul*, 984 F.3d 1251, 1255 (7th Cir. 2021) ("[A] reviewing court does not violate Chenery's command by looking at the ALJ's more thorough discussion of the evidence elsewhere in the decision."); *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021) ("An ALJ need not rehash every detail each time he states conclusions on various subjects.")

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiff's motion to remand (D.E. 16) and denies the Commissioner's motion to affirm (D.E. 24).

**ENTER:**

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: August 15, 2022**